UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-76-H

MARY SHANNON FRANKLIN                                                    PLAINTIFF

V.

LOUISVILLE JEFFERSON COUNTY METRO
GOVERNMENT, et al.                                                       DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Mary Shannon Franklin, has alleged various causes of action against Louisville

Jefferson County Metro Government ("Metro Government"), the Louisville Metro Police

Department (the "Police Department") and Billy Ray White, an officer with the Police

Department.  Metro Government and the Police Department have now moved to dismiss various

of the causes of action.  The motion presents two distinct issues; one purely legal, the other

concerning proper factual inferences.

I.

This action arises out of the rape of Plaintiff on January 3, 2004, by Defendant, Billy Ray

White.  At the time of the rape, White was a Metro police officer and was indeed in uniform.

Although the factual circumstances surrounding the rape are not clear, Franklin alleges that

White "under color of law, entered the apartment of [Franklin]; drew his service revolver and

pointed it at [Franklin]; advised [Franklin] that if she made a sound, he would kill [Franklin];

[White] then proceeded to forcibly rape [Franklin] . . . ."  White also told Franklin that he would

kill her if she reported his actions.

As described in Plaintiff's response, the verified complaint states in paragraph 5 that the action arises under the Constitution of the Commonwealth of Kentucky; Kentucky Civil Rights Act; KRS Chapter 344; and KRS 331.080 (applying to Defendant White); under the Constitution of the United States; the Fifth, Eighth, Ninth, Tenth and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1983 and § 1985; 42 U.S.C. § 2000(e); and under various common law theories of recovery.

The verified complaint alleges generally that the Metro Police and Metro Government were negligent and grossly negligent in hiring, training and/or supervision of White when they knew or should have known that he had not been truthful in his employment application; had a history of abuse towards women; and was a threat to women in general.  The complaint further alleges that through White, Defendants acted in the color of law to deprive Plaintiff of her rights, privileges and immunities secured to her under the United States Constitution and various other statutes.

II.

Whether the doctrine of sovereign immunity protects any party is usually a strictly legal question.  Sovereign immunity is a common law doctrine with a long tradition in Kentucky. Successive versions of the Kentucky Constitution have both acknowledged the doctrine and have set forth the means by which the legislature might waive it.  *See Foley Const. Co. v. Ward*, Ky., 375 S.W.2d 392 (1964).  The only issue remaining is whether either the Kentucky legislature or Metro Government has somehow waived that immunity.  Certainly, the legislature has not done so.  Pursuant to KRS 67C.101(2)(e), Metro Government is "accorded the sovereign immunity

2

granted counties, their agencies, officers and employees." *See also Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128 (Ky. 2004). Plaintiff says that Metro Government has done so because it is a member of the Louisville Area Governmental Self-Insurance Trust. However, a Kentucky court has recently said that participation in an insurance trust does not constitute a waiver of sovereign immunity. *Angel v. Harlan County Board of Educ.*, 14 S.W.3d 559, 561 (Ky. Ct. App. 2000).

Plaintiff also argues that Metro Government is required to defend and indemnify White. Whether this is true is actually an entirely different question. In any event, the Kentucky Supreme Court has said that even where a municipal government may be required to defend and indemnify its employees, no direct judgment can be entered against the county itself. A duty to defend and indemnify does not constitute a waiver of sovereign immunity. *See Schwindel v. Meade County*, 113 S.W.3d 159, 167-68 (Ky. 2003).

As a consequence of this analysis, all the state law claims against Metro Government and the Police Department must be dismissed.[1]

### III.

Plaintiff's primary claim falls under 42 U.S.C. § 1983. Whether that claim can withstand an initial motion to dismiss most often requires a careful weighing of inferences permissible from the pleadings. In considering such a motion the Court should construe all inferences from the pleadings in a light most favorable to Plaintiff. *Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993). Fairness suggests that at this early stage, the Court construe the substance of the allegations

---

[1] Plaintiff named the Police Department as a separate Defendant. However, the Police Department is not a proper Defendant because it is merely a division of Metro Government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Smallwood v. Jefferson County Government*, 743 F. Supp. 502, 503 (W.D. Ky. 1990).

rather than mere labels.  *See Minger v. Green* 239 F.3d 793 (6th Cir. 2001).

Plaintiff alleges that Metro Government knew or should have known about Billy Ray White's dangerous propensities.  Construing the complaint broadly, Plaintiff seems to allege either that, as a matter of course, Metro Government either (1) failed to properly or fully investigate its new police hires or (2) disregarded information about Billy Ray White suggesting that he might be a danger to women.  She says that Metro Government should be liable for the consequences of these hiring decisions and practices.

Municipalities cannot be held liable simply because they employ tortfeasors, nor can they be held liable for a § 1983 claim based solely on negligence or gross negligence.  *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994).   The Supreme Court has placed a heavy burden on plaintiffs seeking to impose municipal liability as a result of hiring, training, and supervision decisions.  Franklin must demonstrate that Metro Government had a policy or custom in place that deprived her of her federal constitutional rights by showing evidence that "*this* officer [White] was highly likely to inflict the *particular* injury suffered by [Franklin]." *Brown*, 520 U.S. at 412.[2]  Moreover, Franklin must demonstrate that Metro Government's decision to hire White or its subsequent actions in training and supervising him reflected "deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision." *Id.* Further,

> [o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the

---

[2] This Court will assume for purposes of this motion that a single hiring decision can constitute a policy or custom of a municipality. *See Brown*, 520 U.S. at 412.

decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'

*Id.* The Court sees only a slim possibility that Plaintiff can meet either of these showings.

However, without knowing the results of discovery, a dismissal would probably be premature.

In her complaint, Franklin alleges only negligence or gross negligence in the hiring, training, and supervision of White, neither of which is sufficient generally to maintain a § 1983 claim against Metro Government. *Gazette*, 41 F.3d at 1066. Franklin has a heavier burden than merely proving that Metro Government hired White with knowledge of his history of abuse toward women. Franklin must go further and prove that adequate scrutiny of White's background would have led a "reasonable policymaker to conclude that the *plainly obvious* consequence of the decision to hire [White] would be the deprivation of [Franklin's] federally protected right . . . ." *Brown*, 520 U.S. at 412. The problem here is that Franklin has alleged only negligence or gross negligence, not deliberate indifference.

Even if Franklin proves that Metro Government knew of White's propensity to violence, that knowledge alone will not support a § 1983 claim against Metro Government in the absence of a showing of intent in the form of "deliberate indifference" by Metro Government to the deprivation of Franklin's constitutional rights. At this stage, it would be unfair to dismiss the §1983 claims based on speculation about what the proof may not show. Rather, the Court must draw all inferences in favor of the plaintiff at this stage, and Franklin is entitled to discover information regarding Metro Government's hiring, training, and supervision of White, even though the Court seriously doubts that discovery will produce evidence sufficient to withstand a motion for summary judgment. *See, e.g., Fox v. DeSoto*, 2006 U.S. Dist. LEXIS 38762 (W.D.

Ky. 2006) (court granted summary judgment to defendant where plaintiff alleged only that defendant failed to use ordinary care in hiring, training or supervision of employee and failed to allege facts sufficient to support a finding of deliberate indifference).  Accordingly, Franklin's § 1983 claim against Metro Government remains.

IV.

Franklin asserts two other claims under 42 U.S.C. § 1985(3) and under 42 U.S.C. § 2000e-17.  Neither of these can survive.

Her § 1985(3) claim pertains to depriving persons of rights or privileges.  To prevail on this claim, she must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citing *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)).  Franklin does not allege any facts that would support a claim of conspiracy under 42 U.S.C. § 1985(3).  Franklin also asserts a violation of 42 U.S.C. § 2000e-2000e-17. The Court presumes that Franklin means 42 U.S.C. § 2000e-17, as there is no § 2000e-2000e-17. 42 U.S.C. § 2000e-17 pertains to government contracts and equal employment opportunity laws, and is clearly inapplicable to the facts of this case.

Consequently, both the § 1985 and § 2000e claims must be dismissed.

6

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record