UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:05CV-76-H

MARY SHANNON FRANKLIN                                                               PLAINTIFF

V.

LOUISVILLE JEFFERSON COUNTY                                                    DEFENDANTS
METRO GOVERNMENT *et al.*

**MEMORANDUM OPINION**

While Billy Ray White was an police officer with the Louisville Metro Police Department ("LMPD"), he raped Plaintiff, Mary Franklin. In this lawsuit, Franklin seeks a remedy against the Louisville Jefferson County Metro Government ("Metro") and LMPD on a variety of theories. It is not an easy matter, however, to obtain legal redress against a public entity for the acts of one of its employees, which were clearly unauthorized and outside the scope of his duties. This Court has previously dismissed all her claims against LMPD and several state law and federal claims against Metro. Plaintiff's sole remaining claim against Metro is under 42 U.S.C. § 1983. Metro has now moved for summary judgment on this last theory. For the following reasons, the Court will grant that motion and dismiss Plaintiff's claim against Metro.

I.

The essential facts of this case are not in dispute and need not be recited at length. White entered Franklin's apartment on January 3, 2004 and raped her at gunpoint. At the time of the rape, he was in uniform. White was subsequently arrested, found guilty of rape and other offenses, and sentenced to twelve years in prison. Franklin then filed this lawsuit, alleging, *inter*

*alia*, that White's actions deprived her of the rights, privileges, and immunities secured to her by the United States Constitution and that she was seeking relief for these violations via 42 U.S.C. § 1983.

Plaintiff alleges that LMPD's background investigation was generally defective and failed to uncover significant information about White's background. Plaintiff contends that one incident in particular involving White should have alerted LMPD to the potential risks White posed. In 1999, White worked for Delta Airlines/Airport Logistics at Louisville International Airport. A co-worker of White's, Vicki Taylor, took out a criminal complaint against White on January 26, 1999, stating the following:

> The Affiant, Vicki L. Taylor, says that on the 24 day of January, 1999, in Jefferson County, Kentucky, the above-named defendant [White] unlawfully . . . came into work area where aft was on 3 separate occasions after being told by deft's supervisor and afft's supervisors that deft was not to be in afft's area. On 1-16-99 deft came onto work floor where aft was and was knocking an object against metal intentionally trying to disturb aft. On 1-31-98 at the work place on cargo bay at airport postal service deft intentionally slammed a metal door on afft's hand, cursing aft. Afft next day was treated and released Clark memorial hospital for bruising to hand. Deft has since been told by afft's management and deft's management to stay out of area where aft is. Deft has since continued coming into afft's area without need. [sic]

An Assistant Jefferson County Attorney reviewed the complaint and concluded that if Taylor's allegations were true, the elements of criminal charge of "harassment" had been met. Kentucky law classifieds "harassment" as either a "violation" or a misdemeanor. The final outcome of Taylor's complaint is unclear. But, it is certain that White was never convicted of any crime or subjected to any civil verdict related to the events. This complaint filed by Taylor was evidently not uncovered until this litigation began. However, LMPD's background investigator did have some evidence of this incident through a conversation with the Airport Police. The details of this conversation are unclear but the background investigator apparently

learned that Taylor had made a harassment-type complaint about White. LMPD's background investigator also tried to contact Taylor herself but was unsuccessful. Finally, LMPD's background investigator apparently did not contact Delta Airlines/Airport Logistics for any further information.

II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 498-499 (6th Cir. 2006). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Barnes v. Kerr Corp.*, 418 F.3d 583, 588 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 (1986)). "A dispute over a material fact cannot be 'genuine' unless a reasonable jury could return a verdict for the nonmoving party." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 433 (6th Cir. 2005) (internal citation omitted).

This Court previously described the legal standard applicable to this case in its Memorandum Opinion dated July 10, 2006:

> Municipalities cannot be held liable simply because they employ tortfeasors, nor can they be held liable for a section 1983 claim based solely on negligence or gross negligence. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994). The Supreme Court has placed a heavy burden on plaintiffs seeking to impose municipal liability as a result of hiring, training, and supervision decisions. Franklin must demonstrate that Metro Government had a policy or custom in place that deprived her of her federal

> constitutional rights by showing evidence that "*this* officer [White] was highly likely to inflict the *particular* injury suffered by [Franklin]." *Brown*, 520 U.S. at 412. Moreover, Franklin must demonstrate that Metro Government's decision to hire White or its subsequent actions in training and supervising him reflected "deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision." *Id.*
>
> The Supreme Court in *Brown* went on to say that:
>
> [o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference." *Id.*

The central thrust of the *Brown* case is that allegations or evidence of negligence or gross negligence are not sufficient to succeed on a section 1983 claim. Franklin must prove that, had Metro conducted an adequate review of White's background, it would have found certain information and that the "plainly obvious consequence" of hiring White with knowledge of that information would have been the deprivation of Franklin's federally protected rights. This standard is a high one.

Though the details of LMPD's background investigation of White are somewhat murky, the bigger picture is clear. LMPD conducted a relatively extensive background check of White, including interviews of neighbors and co-workers, a polygraph examination, a credit history check, a physical agility test, a personal history questionnaire, a driving history check, a medical examination, and a psychological examination. Certainly LMPD could have been more diligent in certain aspects of the background check: LMPD background investigators apparently did not speak with Delta Airlines/Airport Logistics about the Taylor incident, and the criminal complaint that Taylor filed was not found as part of the investigation. However, at *worst*, these omissions might amount to negligence. They would not constitute gross negligence and certainly would

4

not rise to the level of "deliberate indifference" required by the Supreme Court in *Brown*.

Furthermore, even if the background investigation had uncovered Taylor's criminal complaint, no reasonable person can suggest that a "plainly obvious consequence" of that behavior would have been the rape of Mary Franklin. The behavior complained of by Taylor – or at least how she summarized it in her criminal complaint – was not sexual in nature and involved only minimal physical contact between Taylor and White. Certainly the conduct complained of neither concerned a sexual assault nor the use of a weapon, or anything close to either. Furthermore, the Assistant Jefferson County Attorney who reviewed the case classified it as a possible case of "harassment," which under Kentucky law lacks any sexual component. *See* KRS § 525.070. Though LMPD's background investigation also found that White had been part of two physical fights since the age of eighteen, these events would have been insufficient for LMPD's hiring authorities to conclude that White was a potential rapist. The additional information uncovered in litigation does not add much to the harassment claim. It is questionable whether this information would have caused LMPD not to have hired White as a police officer. More important here, there is a substantial gap between the information required *not to hire* White and the information that would make "*plainly obvious*" the consequence that White would violently sexually assault a citizen while in uniform.

### III.

Mary Franklin's rape at the hands of Billy Ray White was a despicable act and an egregious abuse of the public's trust in officers of the law. However, the Louisville Metro government's background investigation of White did not, and could not have, uncovered evidence, the "plainly obvious consequence" of which would have been the deprivation of

5

Franklin's federal constitutional rights. The standard enunciated by the Supreme Court in *Brown* is a high one, and with the evidence presented to this Court, Franklin cannot possibly satisfy her burden of proof.

  White himself is now serving a criminal penalty as a consequence of his acts. The civil claims against him here are the only remaining claims in this case. The Court has a number of options: dismiss for lack of subject matter jurisdiction, remand to state court or, perhaps, trial of the remaining claims. The parties should advise the Court of their thoughts on the matter.

  The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record